UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

UNITED STATES OF AMERICA, ex rel.          CIVIL ACTION NO. 05-1005
RICKY BONIN
                                           JUDGE DOHERTY
VS.
                                           MAGISTRATE JUDGE METHVIN
COMMUNITY CARE CTR. OF
      ST. MARTINVILLE, LLC
MAGNOLIA MANAGEMENT CORP.
SOUTHERN MAGNOLIA, LLC
COMMCARE LOUISIANA
COMMCARE CORP.

## REPORT AND RECOMMENDATION ON
## DEFENDANTS' JOINT MOTION TO DISMISS
## (Rec. Doc. 21)

Before the court is defendants' joint motion to dismiss this *qui tam*[1] or "whistleblower"

suit alleging fraud in Medicare/Medicaid billing at the St. Martinville Rehabilitation and Nursing

Center ("the Center"). Plaintiff is the former administrator of the Center.[2] He asserts claims

under the False Claims Act ("FCA"),[3] and Louisiana's Qui Tam Action under La. R.S. 46:438.3

and 46:439.1.[4] The United States declined to intervene in the suit.[5]

---

[1] *Qui tam* is short for "*qui tam pro domino rege quam pro se ipso in hac parte sequitur,*" which means "who pursues this action on our Lord the King's behalf as well as his own." Rockwell Intern. Corp. v. U.S., 127 S.Ct. 1397, 1403 (2007). *Qui tam* is the mechanism in the False Claims Act and similar state laws which allows persons with evidence of fraud against government programs or contracts to sue the wrongdoer on behalf of the government.

[2] Plaintiff was the administrator between August 2002 and May 23, 2005. Rec. Doc. 1, ¶ II-4.

[3] Title 31 U.S.C. §3729 *et seq.*

[4] Like its federal counterpart, LSA R.S. 46:438.3 provides that no person shall knowingly present a false or fraudulent claim; or knowingly engage in misrepresentation to obtain, or to attempt to obtain, payment from medical assistance programs funds. The "qui tam" provision of LSA-R.S. 46:439.1 provides that a private person may institute a civil action on behalf of medical assistance programs and himself seek recovery.

[5] The complaint was filed on June 10, 2005, and remained under seal and unserved pending government review. Two years later, on August 6, 2007, the government declined to intervene. Rec. Doc. 12. The government may still have substantial involvement in the litigation: *See* U.S. ex rel. Russell v. Epic Healthcare Management Group, 193 F.3d 304, 306-307 (5th Cir. 1999).

2

Defendants move for dismissal under Rule 12(b)(6) for failure to state a claim, or, alternatively, seek a more definite statement under Rules 12(e) and 9(b).  Plaintiff filed an opposition to the motion, defendants filed a reply brief, and plaintiff filed a first amending complaint.[6]  The question remains whether plaintiff's complaint, as amended, sufficiently states claims under the anti-fraud statutes in question.

### *Issues Presented*

Defendants raise the following issues in their motion:

1.    Plaintiff fails to state a claim under the Louisiana Qui Tam Action statute;

2.    Plaintiff fails to meet the "heightened pleading" requirement of Rule 9(b) in connection with his FCA fraud claims; and

3.    Plaintiff has failed to state an FCA claim under the "false certification" theory.

### *LEGAL ANALYSIS*

### A.  Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 8(a)(2) generally requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47 (1957);  Bell Atlantic Corp. v. Twombly, ____ U. S. ___, 127 S.Ct. 1955, 1959 (2007).  The court should accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  Jones v. Greninger, 188 F.3d 322, 324 (5th Cir.1999); Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir.2004).

---

[6] Rec. Docs. 25, 34 and 37.

3

"To survive a Rule 12(b)(6) motion, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.' " In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir.2007) (*quoting* Bell Atlantic Corp. v. Twombly, ___ U.S.___, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic, 127 S.Ct. at 1964-65 (citations, quotations marks, and brackets omitted).[7] Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Id, 127 S.Ct. at 1965, *citing* Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986).

**B.  Issue One - State Qui Tam Claim**

Defendants contend that a key allegation is missing from plaintiff's state *qui tam* claim. This issue may be quickly disposed of, since the deficiency has been corrected in plaintiff's amended complaint.

Under the applicable Louisiana statute, a *qui tam* plaintiff 1) must be an "original source of the information," defined as one who has "direct and independent knowledge of the alleged

---

[7]  The previous 12(b)(6) standard – that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" is no longer "the minimum standard of adequate pleading to govern a complaint's survival." Katrina Canal, 495 F.3d at 205, fn. 10 (*citing* Conley v. Gibson, 355 U.S. 41, 45-46 (1957) and Bell Atlantic, 127 S.Ct. at 1968-69, respectively).

4

violation;" and 2) must have voluntarily provided the information to the secretary or attorney

general before filing a *qui tam* action.[8]

Plaintiff's original complaint satisfied only the first part of the requirement, alleging that,

"[r]elator has direct and independent knowledge of the facts and information hereinafter set forth

concerning the activities of Defendants."[9]  Defendants contend that because the complaint is

silent as to the reporting requirement, the state claim should be dismissed under Rule 12(b)(6).[10]

However, plaintiff's amended complaint specifically alleges:

> This is a claim for treble damages and penalties under the Louisiana qui
> tam and whistleblower laws.  *All conditions precedent required by law have been
> performed and/or occurred prior to plaintiff filing this lawsuit.*"[11]

As noted above, courts "are not bound to accept as true a legal conclusion couched as a

factual allegation," Bell Atlantic, 127 S.Ct. at 1965 (*citing* Papasan v. Allain, 478 U.S. 265, 286,

106 S.Ct. 2932 (1986)).  However, defendants cite no authority, nor has the undersigned found

any, for the proposition that plaintiff must parrot the exact words of the statute in order to state a

claim.  Viewing the allegation in the light most favorable to the plaintiff, the undersigned

---

[8]  La. R.S. 46:439.1 requires as follows:

> B. (1)  A qui tam plaintiff shall be an original source of the information which serves as the basis for the
> alleged violation. More than one person may serve as a qui tam plaintiff in a qui tam action arising out of
> the same information and allegations provided each person qualifies as an original source.

> (2) For purposes of this Subpart, "original source" means a person who has direct and independent
> knowledge of the alleged violation and who has voluntarily provided the information to the secretary or
> attorney general before filing a qui tam action with the court.

[9] Complaint, Rec. Doc. 1, §II-4.

[10]  Defendants contend, "Plaintiff has not alleged that he voluntarily informed the secretary or attorney general prior
to the institution of this suit.  Thus, Plaintiff . . . is precluded from instituting an action or recovering under La. R.S.
46:439.1 et seq."  Rec. Doc. 21-4, p.2.

[11] Rec. Doc. 37, para. XV (emphasis supplied).

5

concludes that the defect raised in defendants' motion has been adequately corrected.  Certainly,

the claim is "enough to raise a right to relief above the speculative level." <u>Bell Atlantic</u>, 127

S.Ct. at 1965.  Accordingly, the motion to dismiss on this basis should be denied.

## C.  Issue Two - Rule 9(b) Heightened Pleading for FCA Claim [12]

Defendants contend that plaintiff's complaint lacks the requisite particularity required

under Rule 9(b).  The issue presented is whether plaintiff's amended complaint has cured any

defects.

### *(1)  The False Claims Act*

"The civil False Claims Act imposes liability on any person who knowingly submits, or

causes the submission of, a false or fraudulent claim for money to the government." <u>United

States v. Southland Mgmt.Corp. (Southland I)</u> 288 F.3d 665, 674 (5th Cir.2002) *vacated on reh'g

en banc on other grounds*, 326 F.3d 669 (5th Cir.2003). The act reads, in relevant part:

**[Title 31] § 3729. False claims**

**(a) Liability for certain acts .**– Any person who –

> (1) knowingly presents, or causes to be presented, to an officer or
> employee of the United States Government or a member of the Armed
> Forces of the United States a false or fraudulent claim for payment or
> approval;
>
> (2) knowingly makes, uses, or causes to be made or used, a false record or
> statement to get a false or fraudulent claim paid or approved by the
> Government;     * * *

---

[12]  Although not at issue here, state law fraud claims are also subject to the requirements of Rule 9(b).  <u>Williams v.
WMX Technologies., Inc.</u>, 112 F.3d 175, 177 (5th Cir.1997) *cert. denied*, 522 U.S. 966, 118 S.Ct. 412, 139 L.Ed.2d
315 (1997).  Furthermore, Louisiana applies the same heightened pleading standard under  LA-C.C.P. Art. 856,
which provides: "In pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with
particularity. Malice, intent, knowledge, and other condition of mind of a person may be alleged generally."

6

is liable to the United States Government for a civil penalty of not less
than $5,000 and not more than $10,000 plus 3 times the amount of
damages which the Government sustains because of the act of that person.
. .[13]

A plaintiff must assert the following to state a claim under the FCA: (1) there was a false
statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter;
(3) that was material; and (4) that caused the government to pay out money or to forfeit moneys
due. 31 U.S.C. § 3729(a) and (b); United States ex. rel. Harrison v. Westinghouse Savannah
River Co., 176 F.3d 776, 788 (4th Cir.1999).

A claim under the FCA must fulfill the heightened pleading requirements for fraud under
Rule 9(b).  U.S. ex rel. Russell v. Epic Healthcare Management Group,193 F.3d 304, 308 (5th
Cir. 1999).  An FCA plaintiff is not entitled to pursue discovery until the heightened pleading
requirement is met.  Williams v. WMX Technologies., Inc., 112 F.3d 175, 178 (5th Cir.1997)
cert. denied, 522 U.S. 966, 118 S.Ct. 412, 139 L.Ed.2d 315 (1997).

Rule 9(b) states:

**(b) Fraud or Mistake; Conditions of Mind**. In alleging fraud or mistake, a party
must state with particularity the circumstances constituting fraud or mistake.
Malice, intent, knowledge, and other conditions of a person's mind may be alleged
generally.

A claim is stated "with particularity" when it includes the "time, place and contents of the
false representations, as well as the identity of the person making the misrepresentation and what
[that person] obtained thereby."  Tuchman v. DSC Communications Corp., 14 F.3d 1061, 1068
(5th Cir.1994); WMX Tech., 112 F.3d at 177; Russell, 193 F.3d at 308.

---

[13]  Effective August 30, 1999, the minimum and maximum penalties were changed to $5,500 and $11,000
respectively. See 28 C.F.R. § 85.3(a)(9) (2008).

7

> This court has stated that Rule 9(b) requires that the plaintiff allege "the particulars of time, place, and contents of the false representations," as well as the identity of the person making the misrepresentation and what that person obtained thereby, otherwise referred to as the "who, what, when, where, and how" of the alleged fraud.

 U.S. ex rel. Willard v. Humana Health Plan of Texas Inc., 336 F.3d 375, 384 (5th Cir. 2003)(citations omitted).

A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6). Lovelace v. Software Spectrum, Inc., 78 F.3d 1015, 1017 (5th Cir.1996).  However, leave to amend is almost always permitted unless there is good cause to do otherwise.  Summer v. Land & Leisure, Inc., 664 F.2d 965, 971 (5th Cir.1981) (citing 2A Moore's Federal Practice, P 9.03).  Additionally, "a court's discretion to dismiss a pleading without affording leave to amend is restricted by Rule 15(a), which directs that leave to amend shall be freely given when justice requires. . ."  2 Moore's Federal Practice §9.03 [4] (3d. ed.1997).  See Jag Media Holdings Inc. v. A.G. Edwards & Sons Inc., 387 F.Supp.2d 691, 704 ( S.D.Tex.2004).

While motions for more definite statement under Rule 12(e) are generally disfavored, Prudhomme v. Procter & Gamble Co., 800 F. Supp. 390, 396 (E.D.La.1992) citing Mitchell v. E-Z Way Towers, Inc., 269 F.2d 126 (5th Cir.1959), such a motion is appropriate to address a failure to comply with the heightened pleading requirements of Rule 9.  Wright & Miller 5A FED. PRAC. & PROC.CIV.3D Rule 9.

### (2)  Louisiana Nursing Homes & Medicaid

Louisiana's Medicaid Program covers, among other things, nursing home care to qualified low-income or disabled residents "who require assistance with activities of daily living (for

example, eating, bathing, dressing, grooming, and transferring)."[14]  In restricted circumstances, Medicaid will also pay for "restorative" nursing when a resident is not a candidate for a more formalized therapy program.[15]  Medicaid pays qualified health care providers directly for covered services, after all other medical insurances, including Medicare, have paid.[16]  St. Martinville Rehab & Nursing Center is one of two nursing homes in St. Martin Parish approved as a Medicaid provider.[17]  Both Medicare and Medicaid are federally administered by the Centers for Medicare and Medicaid Services (CMS), a federal agency within the United States Department of Health and Human Services (DHHS).[18]

### (3)  Plaintiff's False Claims Act Allegations

Read together, plaintiff's complaint and amended complaint allege as follows [Rec.Docs.1, 37]:

1.      Plaintiff was employed as administrator of St. Martinville Rehabilitation and Nursing Center from August 2002 until May 23, 2005.  Complaint, ¶ II-4.

---

[14]  La. Health Services Financing, "Louisiana Medicaid Long Term Care," online April 8, 2008, http://www.dhh.louisiana.gov/offices/?ID=152.

[15]  "Restorative Nursing," DHHS Medicaid (Health Services Financing), Rate & Audit Review Section, online April 8, 2008, http://www.dhh.louisiana.gov/offices/page.asp?ID=111&Detail=3839.

[16]  La. Department of Health and Human Services brochure, p.2, "Louisiana's Medicaid Program," online April 8, 2008, http://www.dhh.louisiana.gov/offices/publications/pubs-92/Flyer%20Medical%20Programs%2010-04.pdf.

[17]  Id., http://www.dhh.louisiana.gov/offices/providers.asp?ID=112#Cat-37.

[18]  CMS was previously known as the Health Care Financing Administration (HCFA).

9

2.    On a Monday in April 2005, a representative of Myers and Stauffer[19] visited the Center to conduct an audit for the State of Louisiana concerning the Center's Medicaid billing. There was only one audit in April of 2005.  Complaint ¶ IV, Am.Com. ¶ I.

3.    Prior to the audit, Myers and Stauffer had sent defendants "a list of the names of patients whose files it wanted to review for the audit."  There were approximately 22 names on the list.  Am.Com. ¶ VII, VIII.

4.    On the Saturday and Sunday prior to the Monday audit, a group of defendants' employees, "directed and approved by corporate hierarchy," met to prepare for the audit. The employees included:

> Chris Delaune, Corporate Nurse
> Lisa Lee, Director of Nursing
> Amy Bullard, Assistant Director of Nursing
> Mindy Primeaux, Medical Records
> Annette Bourque        Complaint ¶ 5, 15, Am.Com. ¶ VII

5.    The preparation involved pulling the patient files on the auditor's list and comparing the charts to the patient's Minimum Data Set (MDS)[20] reports "to make sure they matched up."  The MDS reports contain "a large number of items, such as a patient's cognitive patterns, communication, psychological well-being, restorative care, etc."  Am.Com ¶ VI, VIII.

6.    The information contained in the MDS is sent to the state for billing, and "impacts a nursing home's payment rate" under the Medicaid program because it is "used for purposes such as payment rate setting and quality monitoring." The amount of "restorative care" indicated in an MDS report affects the Medicare/Medicaid payment

---

[19]  This accounting firm, incorrectly identified in plaintiff's complaints as Myers and "Stoffers,"was contracted by the Louisiana Department of Health and Hospitals (DHH) to design, develop, and maintain the Medicaid reimbursement methodology for nursing homes in the State.  During fiscal year 2004-2005, Louisiana paid Myers and Stauffer over $2.4 million to "Maintain the Nursing Home Case Mix Reimbursement System for Dept. of Health & Hospitals."  *See* Office of the Governor, Division of Administration, "2004/2005 Annual Report, Professional, Personal, Consulting, and Social Services Contracts," online April 10, 2008, http://doa.louisiana.gov/OCR/AnnualReport2005.pdf

[20]  "The Minimum Data Set (MDS) is part of the federally mandated process for clinical assessment of all residents in Medicare or Medicaid certified nursing homes. The process provides a comprehensive assessment of each resident's functional capabilities and help nursing home staff identify health problems . . . MDS assessments are required for residents on admission to the nursing facility and then periodically, within specific guidelines and time frames . . . MDS information is transmitted electronically by nursing homes to the MDS database in their respective States.  MDS from the State databases is captured into the national MDS database at CMS."  – U. S. Department of Health & Human Services, "MDS 2.0 Public Quality Indicator and Resident Reports - Overview," online April 11, 2008, http://www.cms.hhs.gov/MDSPubQIandResRep/.

10

group to which the nursing home resident will be assigned, called the Resource Utilization Group (RUG).[21]  Complaint ¶ 14, Am. Comp. ¶ VI, VIII.

7.      On the weekend prior to the audit, "[w]henever there was a discrepancy between a patient's chart and an MDS . . . Chris Delaune and/or Annette Bourque, and/or Lisa Lee, and/or Amy Bullard, and/or Mindy Primeaux, would alter and/or forge and/or create documents to fix these discrepancies."  Complaint ¶ 15, Am.Comp ¶ VIII.

8.      Many of the patients on the Myers and Stauffer audit list "were not receiving restorative care, yet the state was being billed for this restorative care."  Defendants' employees, on the weekend prior to the audit, "would physically create another MDS report by either writing or typing on a computer that such patient had restorative care, when, in fact, that patient did not receive any restorative care."  Am. Comp. ¶ VIII, IX.

9.      On the day of the audit, Lisa Lee, Director of Nursing, sat with the auditor in the conference room at the Center while he inspected patient files. During this process, Lee would use her cell phone to call Delaune, Bullard, and Primeaux, who were in another part of the building, advising them "that she was missing whatever the auditor had asked about and asked them to bring it to her."  Complaint ¶ 10-12, Am.Comp. ¶ II.

10.     Delaune, Bullard and Primeaux "would then either create and/or forge and/or alter patients' charts by creating a Minimum Data Set (MDS) report by writing and/or typing that restorative care had been given to a patient, when, in fact, it had not."  The false documents were made "in order to justify the RUG category indicated on the MDS which regulates the billing/reimbursement schedule."  Complaint ¶ 10-12, Am.Comp. ¶ II, III.

11.     The falsified MDS reports would be forged with the signature of Jeanine Turner, a former assistant director of nursing who was no longer employed by defendants. Am.Comp.¶ III.

12.     Delaune, Bullard and/or Primeaux also falsified ADL sheets (Activities of Daily Living) during the Monday audit, by "stating that a patient had done an activity of some sort on a

---

[21]  Each resident of a certified nursing home falls into a payment group for purposes of Medicare reimbursement, depending upon the resources required to meet his or her care needs.  These groups are called Resource Utilization Groups or RUGs.

  Skilled nursing facilities determine a RUG based on 108 items on an assessment of the resident known as the Minimum Data Set (MDS). The Centers for Medicare & Medicaid Services (CMS) requires skilled nursing facilities to complete the MDS for each resident covered by Medicare Part A by approximately the 5th, 14th, and 30th day of the resident's stay, and every 30 days thereafter, as appropriate. CMS considers the MDS to be part of the medical record and expects information contained in the rest of the medical record to support the MDS.

Levinson, Daniel R., Inspector General, U. S. Department of Health and Human Services, "A Review of Nursing Facility Resource Utilization Groups," online April 8, 2008, http://oig.hhs.gov/oei/reports/oei-02-02-00830.pdf.

11

certain day, when in fact, that patient had not," and also by forging the initials of currently-employed certified nursing assistants (CNA's) next to the false additions. Am.Comp. ¶ IV.

13.     The falsified MDS reports and ADL sheets would then be brought to Lee, who then gave the documents to the auditor.

14.     Defendants, through the actions of their employees and/or agents, engaged in fraud for financial gain; intentionally forged patients' MDS reports and ADL sheets to receive a higher RUG rate and more compensation from the state; and to keep their error rate below the state's acceptable error rate to avoid less compensation. Am.Comp ¶ X.

This summary of plaintiff's allegations, read in the light most favorable to the plaintiff, makes clear that plaintiff has adequately stated a fraud claim under the FCA and Louisiana's *qui tam* statute, even under the heightened pleading requirement of Rule 9(b).  Plaintiff has stated "'the particulars of time, place, and contents of the false representations,' as well as the identity of the person making the misrepresentation and what that person obtained thereby, otherwise referred to as the 'who, what, when, where, and how' of the alleged fraud."  <u>U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.</u>, 336 F.3d 375, 384 (5th Cir. 2003)(citations omitted).

Defendants cite no persuasive authority for the proposition that plaintiff must allege in the complaint, prior to discovery, every possible detail concerning the falsified documents – e.g., exact patient names – in order to meet the requirements of Rule 9(b).  Plaintiff has provided sufficient detail by which the exact documents may be identified.  Plaintiff alleges that he cannot, at this time, "identify all of the false claims for payment" because the records are in defendants' possession.[22]  The Fifth Circuit has held that "when the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge, the Rule 9(b) standard is relaxed, and fraud may be pled on information and belief, provided the plaintiff sets forth the factual basis for his belief."

---

[22] Rec. Doc. 1, para. 31.

12

Russell, 193 F.3d at 308.  Although discovery will allow plaintiff to more precisely identify the patient charts at issue, he has pled his claims in far more detail than merely "on information and belief."

As noted above, a claim under the FCA may be stated not only by alleging that a false claim was presented to the government for payment, but also by alleging that a defendant "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government."  31 U.S.C. § 3729(a)(2).  Here, plaintiff alleges that specific documents were falsified and/or forged, on discernible dates, by identified individuals.  The scienter requirement is well-pled.  There is also a clear and articulated allegation of a causal relationship between the documents which were allegedly falsified – the MDS reports and ADL sheets – and the ultimate payments received from the federal Medicare/Medicaid program.

For the foregoing reasons, the undersigned finds that plaintiff has met the heightened pleading requirement of Rule 9(b), and recommends that defendants' motion to dismiss be denied on this ground.

**D.  Issue Three - False Certification Theory**

In Paragraphs 20-25 of the original complaint, and Paragraphs XI - XIV of the amended complaint, plaintiff sets forth allegations to assert claims of "false certification" as an alternative means to establish defendants' liability under the FCA.

13

Courts have recognized two types of false certification theories in connection with FCA claims – express and implied.  The Fifth Circuit has recognized only the theory of express certification.[23]

Under the express certification theory, "[w]here the government has conditioned payment of a claim upon a claimant's certification of compliance with, for example, a statute or regulation, a claimant submits a false or fraudulent claim when he or she falsely certifies compliance with that statute or regulation.  U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 902 (5th Cir. 1997).

In his original complaint, plaintiff claims that defendants violated the FCA, through their alleged forgeries and submission of fraudulent claims, in violation of regulatory schemes.[24] Plaintiff also alleged that the Medicaid Provider Agreement conditions participation in the Medicaid Program on compliance with all state and federal Medicaid statutes and regulations, and, by submitting a claim for payment, a provider implicitly certifies that it is in compliance with all state and federal Medicaid requirements.[25]

Plaintiff's amended complaint alleges that defendants' actions of falsifying MDS reports were in direct violation of 42 C.F.R. §§455.18, 455.19, and 455.23.   These regulations were promulgated by CMS, the federal agency which administers the Medicare and Medicaid program within DHHS, and are entitled, "Program Integrity: Medicaid; Subpart A. Medicaid Agency

---

[23]  Implied false certification has been acknowledged where "the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment."  Mikes v. Straus, 274 F.3d 687, 699 (2d Cir.2001).

[24] Rec. Doc. 1, para. 20.

[25] Id., para. XIV.

14

Fraud Detection and Investigation Program."  42 C.F.R. §§455.18 and 455.19 require the agency to include a certification of truthfulness on "all provider claims forms" or, alternatively, "on the reverse of checks or warrants payable to each provider."[26]  Under 42 C.F.R. §455.23, a State Medicaid agency may withhold funds from a provider upon receiving evidence of fraud or willful misrepresentation.[27]  Plaintiff alleges, in the alternative, his original allegations regarding implied certification through the Medicaid Provider Agreement.[28]

"The False Claims Act does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe."  U.S. ex rel.

---

[26] 42 C.F.R. § 455.18 (a) provides in pertinent part:

(a) Except as provided in § 455.19, the agency must provide that all provider claims forms be imprinted in boldface type with the following statements, or with alternate wording that is approved by the Regional CMS Administrator:

(1) "This is to certify that the foregoing information is true, accurate, and complete."

(2) "I understand that payment of this claim will be from Federal and State funds, and that any falsification, or concealment of a material fact, may be prosecuted under Federal and State laws."

42 C.F.R. § 455.19 provides:

As an alternative to the statements required in § 455.18, the agency may print the following wording above the claimant's endorsement on the reverse of checks or warrants payable to each provider: "I understand in endorsing or depositing this check that payment will be from Federal and State funds and that any falsification, or concealment of a material fact, may be prosecuted under Federal and State laws."

[27] 42 C.F.R. § 455.23 provides in pertinent part:

(a) Basis for withholding. The State Medicaid agency may withhold Medicaid payments, in whole or in part, to a provider upon receipt of reliable evidence that the circumstances giving rise to the need for a withholding of payments involve fraud or willful misrepresentation under the Medicaid program. The State Medicaid agency may withhold payments without first notifying the provider of its intention to withhold such payments. A provider may request, and must be granted, administrative review where State law so requires.

[28] Rec. Doc. 37, para. XIV.

15

Willard v. Humana Health Plan of Texas Inc., 336 F.3d 375, 381 (5th Cir. 2003).  The Fifth Circuit has not specifically addressed whether FCA liability can be based on an "implied certification" theory. Id. at 381.  On March 5, 2008, the Fifth Circuit again deferred the question "whether implied certifications may be claims" under the FCA in March, 2008.  U.S. ex rel. Marcy v. Rowan Companies, Inc., — F.3d. —, 2008 WL 588745, 3 (5th Cir. 2008).

Defendants contend that the cited regulations do not meet the standard for express certification set forth in Thompson , 125 F.3d 899 (5th Cir. 1997).  The undersigned agrees. Plaintiff has not identified any "statute or regulation" that defendants' supposedly certified compliance with, and plaintiff offers no persuasive authority for the proposition that, in this Circuit at least, falsely certifying truthfulness on a claim is sufficient to articulate a "false certification" claim under the FCA.  At most, such a pleading would state a claim for implied certification, which is not recognized in this Circuit.

Accordingly, the undersigned finds that plaintiff has not alleged facts to support a claim for a violation of the FCA under the "express certification" theory.  As previously stated, none of the regulations cited by plaintiff condition payment on the compliance with a statute or regulation.

Considering the foregoing, the undersigned concludes that the plaintiff has not stated a claim for "false certification" under the FCA.  Defendants motion to dismiss should be granted as to these claims.  Furthermore, as plaintiff has already been given leave to amend his complaint, further amendment is not appropriate or necessary.

16

### *Conclusion*

For the foregoing reasons, it is recommended that the defendants' motion to dismiss be GRANTED IN PART solely with respect to plaintiff's FCA claims under the theory of "false certification," and that the motion in all other respects be DENIED, leaving intact plaintiff's FCA claims and his state *qui tam* claims.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir.  1996).**

Signed at Lafayette, Louisiana, on April 11, 2008**.**

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)