RECEIVED
MAY 1 6 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.*, RICKY BONIN | CIVIL ACTION NO. 05-1005 |
| VERSUS | JUDGE DOHERTY |
| COMMUNITY CARE CENTER OF ST. MARTINVILLE, LLC, ET AL. | MAGISTRATE JUDGE METHVIN |

### MEMORANDUM RULING

Pending before this Court is a "Report and Recommendation on Defendants' Joint Motion to Dismiss" [Doc. 38] issued by Magistrate Judge Methvin, in which the magistrate judge recommends defendants' "Joint Motion to Dismiss Bonin's Fraud Claims" [Doc. 21] be GRANTED IN PART AND DENIED IN PART. Specifically, the magistrate judge recommended dismissal of plaintiff's False Claims Act ("FCA") claim under the theory of "false certification," but further recommends plaintiff's remaining FCA claims, as well as plaintiff's state law *qui tam* claims, should remain pending. Defendants Community Care Center of St. Martinville, L.LC., Magnolia Management Corporation, Southern Magnolia, L.LC., CommCare Louisiana, and CommCare Corporation [hereinafter collectively referred to as "defendants"] filed an Objection to Magistrate Judge Methvin's Report [Doc. 45], wherein defendants argue the motion to dismiss plaintiff's FCA claims should have been granted in its entirety because plaintiff has failed to plead his False Claims Act claim with sufficient particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.

For the following reasons, this Court ADOPTS Magistrate Judge Methvin's

Recommendation, concluding, as did the magistrate judge, plaintiff has pled his FCA claim with sufficient particularity pursuant to Rule 9(b). Accordingly, this Court AFFIRMS the magistrate judge's denial of that portion of defendants' Motion to Dismiss, and the plaintiff's FCA claim remains pending at this time.[1]

**1.     Factual and Procedural Background**

As set forth in the magistrate judge's Report and Recommendation, plaintiff filed the instant lawsuit on June 10, 2005. The instant motion to dismiss was filed on October 26, 2007. On December 18, 2007, plaintiff filed a First Amending Complaint [Doc. 37]. The following facts, taken from the plaintiff's complaint and amended complaint, were set forth by the magistrate judge as follows[2]:

1. Plaintiff was employed as administrator of St. Martinville Rehabilitation and Nursing Center from August 2002 until May 23, 2005. [Complaint, ¶ II-4].

2. On a Monday in April 2005, a representative of Myers and Stauffer [an accounting firm] visited the Center to conduct an audit for the State of Louisiana concerning the Center's Medicaid billing. There was only one audit in April of 2005. [Complaint ¶ IV, Am.Com. ¶ I].

3. Prior to the audit, Myers and Stauffer had sent defendants "a list of the names of patients whose files it wanted to review for the audit." There were approximately 22 names on the list. [Am.Com. ¶ VII, VIII].

---

[1] Although defendants state in their Objection they are "appealing" the magistrate judge's Report and Recommendation, no appeal can be had from the Report and Recommendation, inasmuch as the Report is not a final ruling of this Court. Because the magistrate judge's Report contains merely a recommendation, final adjudication of this motion is made by this Court after a review of the briefs, the magistrate judge's Report, and the applicable law.

[2] This Court notes that in her Report and Recommendation, the magistrate judge cites to several online websites – including the website for the United States Department of Health and Human Services – for additional information in the Medicare arena, including information regarding the significance of MDSs and ADLs. This Court has question as to the propriety of a court making extrajudicial findings by way of evidence not presented by the parties, inasmuch as the parties have no opportunity to challenge such evidence. However, in the instant case, it appears the plaintiff has provided sufficient information about "RUGs," "MDSs," and "ADLs" in the Complaint and Amended Complaint, and extrajudicial information supplied by the magistrate judge is merely superfluous. Thus, this Court does not rely on the information contained in those websites in rendering this Ruling.

4. On the Saturday and Sunday prior to the Monday audit, a group of defendants' employees, "directed and approved by corporate hierarchy," met to prepare for the audit. The employees included:

   > Chris Delaune, Corporate Nurse
   > Lisa Lee, Director of Nursing
   > Amy Bullard, Assistant Director of Nursing
   > Mindy Primeaux, Medical Records
   > Annette Bourque

   [Complaint ¶ 5, 15, Am.Com. ¶ VII].

5. The preparation involved pulling the patient files on the auditor's list and comparing the charts to the patient's Minimum Data Set (MDS) reports "to make sure they matched up."[3] [Am.Com ¶ VI, VIII].

6. The information contained in the MDS is sent to the state for billing, and "impacts a nursing home's payment rate" under the Medicaid program because it is "used for purposes such as payment rate setting and quality monitoring." The amount of "restorative care" indicated in an MDS report affects the Medicare/Medicaid payment group to which the nursing home resident will be assigned, called the Resource Utilization Group (RUG). [Complaint ¶ 14, Am. Comp. ¶ VI, VIII].[4]

7. On the weekend prior to the audit, "[w]henever there was a discrepancy between a patient's chart and an MDS . . . Chris Delaune and/or Annette Bourque, and/or Lisa Lee, and/or Amy Bullard, and/or Mindy Primeaux, would alter and/or forge and/or create documents to fix these discrepancies." [Complaint ¶ 15, Am.Comp ¶ VIII].

8. Many of the patients on the Myers and Stauffer audit list "were not receiving restorative care, yet the State was being billed for this restorative care." Defendants' employees, on the weekend prior to the audit, "would physically create another MDS report by either writing or typing on a computer that such patient had restorative care, when, in fact, that patient did not receive any restorative care." [Am. Comp. ¶ VIII,

---

[3] According to plaintiff's Amended Complaint, "[i]n every patient's chart, there is an MDS. The MDS contains a large number of items, such as a patient's cognitive patterns, communication, psychological well-being, restorative care, etc. The information contained in the MDS is also used for purposes such as payment rate setting and quality monitoring, which impacts a nursing home's payment rate and standing in terms of the quality monitoring process." *See* Plaintiff's Amended Complaint, ¶VI.

[4] Plaintiff explains in his Amended Complaint that "RUG rates are set by the state to determine the rate of reimbursement payment to be received by a provider. RUG rates are varied depending on the type of care a patient received. The amount of restorative care therapy given to a resident affects the RUG category in which they are placed. This category in turn affects the amount of money paid by Medicaid and/or Medicare." *See* Plaintiff's Amended Complaint, ¶VI.

IX].

9. On the day of the audit, Lisa Lee, Director of Nursing, sat with the auditor in the conference room at the Center while he inspected patient files. During this process, Lee would use her cell phone to call Delaune, Bullard, and Primeaux, who were in another part of the building, advising them "that she was missing whatever the auditor had asked about and asked them to bring it to her." [Complaint ¶ 10-12, Am.Comp. ¶ II].

10. Delaune, Bullard and Primeaux "would then either create and/or forge and/or alter patients' charts by creating a Minimum Data Set (MDS) report by writing and/or typing that restorative care had been given to a patient, when, in fact, it had not." The false documents were made "in order to justify the RUG category indicated on the MDS which regulates the billing/reimbursement schedule." [Complaint ¶ 10-12, Am.Comp. ¶ II, III].

11. The falsified MDS reports would be forged with the signature of Jeanine Turner, a former assistant director of nursing who was no longer employed by defendants. [Am.Comp. ¶ III].

12. Delaune, Bullard and/or Primeaux also falsified ADL sheets (Activities of Daily Living) during the Monday audit, by "stating that a patient had done an activity of some sort on a certain day, when in fact, that patient had not," and also by forging the initials of currently-employed certified nursing assistants (CNA's) next to the false additions. [Am.Comp. ¶ IV].

13. The falsified MDS reports and ADL sheets would then be brought to Lee, who then gave the documents to the auditor.

14. Defendants, through the actions of their employees and/or agents, engaged in fraud for financial gain; intentionally forged patients' MDS reports and ADL sheets to receive a higher RUG rate and more compensation from the state; and to keep their error rate below the state's acceptable error rate to avoid less compensation. [Am.Comp ¶ X].

Defendants contend plaintiff's complaint lacks the requisite particularity required under Rule 9(b) of the Federal Rules of Civil Procedure. After the motion to dismiss was filed, plaintiff filed an Amended Complaint. The issue presented is whether plaintiff's Amended Complaint has cured any defects.

4

## II. Law and Discussion

"The civil False Claims Act imposes liability on any person who knowingly submits, or causes the submission of, a false or fraudulent claim for money to the government." *See* 31 U.S.C. §3729; *United States v. Southland Mgmt.Corp. (Southland I)*, 288 F.3d 665, 674 (5th Cir. 2002), *vacated on reh'g en banc on other grounds*, 326 F.3d 669 (5th Cir. 2003). The FCA states, in relevant part:

> **§3729. False claims**
>
> **(a) Liability for certain acts.** Any person who
>
> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
>
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;
>
> ... is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 plus 3 times the amount of damages which the Government sustains because of the act of that person...

31 U.S.C. §3729(a)(1) & (2).

A plaintiff must assert the following to state a claim under the FCA: (1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due. 31 U.S.C. § 3729(a) and (b); *See, e.g., United States ex. rel. Harrison v. Westinghouse Savannah River*

*Co.*, 176 F.3d 776, 788 (4th Cir.1999).[5]

A claim brought under the FCA must also fulfill the heightened pleading requirements for fraud under Rule 9(b) of the Federal Rules of Civil Procedure. *U.S. ex rel. Russell v. Epic Healthcare Management Group*, 193 F.3d 304, 308 (5th Cir. 1999). An FCA plaintiff is not entitled to pursue discovery until the heightened pleading requirement is met. *Williams v. WMX Technologies., Inc.*, 112 F.3d 175, 178 (5th Cir.1997), *cert. denied*, 522 U.S. 966, 118 S.Ct. 412, 139 L.Ed.2d 315 (1997). Rule 9(b) states:

> **(b) Fraud or Mistake; Conditions of Mind.** In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed.R.Civ.P.9(b).

Under well-established Fifth Circuit law, a claim is stated "with particularity" when it includes the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994); *WMX Tech.*, 112 F.3d at 177; *Russell*, 193 F.3d at 308. The Fifth Circuit has stated Rule 9(b) requires the plaintiff to allege "the particulars of time, place, and contents of the false representations," as well as the identity of the person making the misrepresentation and what that person obtained thereby, otherwise referred to as the "who, what, when, where, and how" of the alleged fraud. *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 384 (5th Cir. 2003) (citations omitted).

---

[5] Neither party cited, and this Court was unable to find, a published Fifth Circuit case setting forth the elements of an FCA claim. For this reason, presumably, the magistrate judge cited a Fourth Circuit case in her Report and Recommendation. Because the Fourth Circuit case is consistent with the cases this Court located in its own research, the Fourth Circuit case is cited in this Ruling.

A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6). *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir.1996). However, leave to amend is almost always permitted unless there is good cause to do otherwise. *Summer v. Land & Leisure, Inc.*, 664 F.2d 965, 971 (5th Cir. 1981) (*citing* 2A Moore's Federal Practice, P 9.03). Additionally, "a court's discretion to dismiss a pleading without affording leave to amend is restricted by Rule 15(a), which directs that leave to amend shall be freely given when justice requires. . ." 2 Moore's Federal Practice §9.03 [4] (3d. ed.1997).

In its Objections, defendants' primary argument is that plaintiff's original and amended complaints fail to identify "the content or any particulars of any supposed false statements purportedly made by the Defendants."[6] For example, although plaintiff claims ADL sheets were altered to show "a patient had done some activity of some sort on a certain day, when in fact, that patient had not," and although plaintiff alleges MDS report were modified to show "that restorative care had been given to a patient, when, in fact, it had not," defendants argue plaintiff's failure to identify *what specific activities* patients were alleged to have done but in fact did not do, and *what specific type of restorative care* was allegedly received but not actually received is fatal to plaintiff's FCA claims. Defendants argue by failing to specifically state what false statements the defendants allegedly made, the plaintiff has not particularly or sufficiently pleaded his fraud claim.

After consideration of plaintiff's original and amended complaints and the arguments of counsel, this Court concludes the plaintiff has pled his FCA claims with sufficient particularity. The

---

[6] This Court notes that, throughout their Objections, defendants cite primarily to cases from other circuits and from district courts both within and outside the Fifth Circuit. To the extent an area of law is not addressed by the Fifth Circuit, the preferred practice is to so state and only then to cite to cases from other circuits. As counsel should be aware, cases from other circuits – and district court cases from any circuit – are not binding on this Court.

summary of plaintiff's allegations makes clear plaintiff has adequately described the content of the alleged false representations. Plaintiff alleges defendants altered patient charts within the 22 identified charts, MDSs, and ADLs in order to ensure patient charts "matched up" with the documents submitted to Medicare and "in order to justify the RUG category indicated on the MDS which regulates the billing/reimbursement schedule." Plaintiff alleges the falsified MDS reports were then forged with the signature of Jeanine Turner, a former assistant director of nursing who was no longer employed by defendants, and ADL sheets were forged by adding the initials of currently-employed CNAs next to the false additions on ADL sheets. Specifically, plaintiff alleges the "content" of the false information primarily involved false certifications that patients who had not actually received restorative *were* receiving restorative care, and that patients who had not actually performed certain activities of daily living *had* performed such activities.

Defendants' argument that plaintiff's allegations do not sufficiently plead fraud are not persuasive. Indeed, although no answer has been filed in this case, defendants presumably deny plaintiff's allegations of fraud and will presumably offer their patient files and the MDSs/ADLs for each involved patient to prove those patients got the restorative care that was reported and performed the activities of daily living they were reported to have performed. Therefore, defendants will likely argue *no* false information was submitted to Medicare. On the other hand, in order to prove its case, plaintiff must show there was a material false statement or fraudulent course of conduct that was carried out with the requisite scienter that caused the government to pay out money. To prove *its* case, plaintiff will no doubt rely on the same patient charts, MDSs and ADLs, and its evidence of fraud will consist of the allegedly false statements contained in the patient charts and MDSs.

Considering the foregoing, plaintiff has indeed supplied this Court with the content of the

alleged false representations by alleging false statements were either added to patient charts and MDSs/ADLs, or new MDSs/ADLs were created to "match up" with patient charts that had been falsified, and then the falsified patient charts and MDSs/ADLs were certified to Medicare with forged signatures.[7]

Plaintiff acknowledges he cannot, at this time, "identify all of the false claims for payment" because the records are in *defendants*' possession. The Fifth Circuit has held "when the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge, the Rule 9(b) standard is relaxed, and fraud may be pled on information and belief, provided the plaintiff sets forth the factual basis for his belief." *Russell*, 193 F.3d at 308. Here, plaintiff alleges specific documents were falsified and/or forged, on discernible dates, by identified individuals. Therefore, as the magistrate judge noted, although discovery will allow plaintiff to more precisely identify the patient charts at issue, plaintiff has pled his claims in far more detail than merely "on information and belief."

Finally, the Court notes the plaintiff has not alleged the falsified information pertained to *hundreds* of patients, nor does plaintiff vaguely contend the false information concerns, for example, *all* patients on a certain floor of the nursing home or all *patients* in a certain wing of the home. Rather, the plaintiff rather precisely alleges the false statements were restricted to the 22 names on the Myers and Stauffer audit list and specifically names the defendant employees who were allegedly involved in the falsification of records and documents and the signature allegedly falsified. While

---

[7] This Court notes the magistrate judge recommended dismissal of plaintiff's FCA claims under the theory of "false certification," and defendants do not appear to object to that recommendation. The "false certification" claim is separate and distinct from the FCA fraud claim, yet this Court notes the fact that defendants are alleged to have forged signatures on the patient charts/MDSs/ADLs is an aspect of plaintiff's FCA fraud claims that is separate and distinct from the "false certification" claim.

9

this Court notes a motion for more definite statement, which is generally disfavored but appropriate to address a failure to comply with the heightened pleading requirements of Rule 9, might provide more clarity as to *which* defendants performed which allegedly fraudulent acts, the Court concludes that because the records are in the possession of the defendants, it may prove difficult, if not impossible, for plaintiff without benefit of the records, to remember which defendants performed which acts as to which charts.

Despite the foregoing, the Court concludes plaintiff has sufficiently pled the content of the alleged false statements supporting his FCA claims pursuant to Rule 9(b). For these reasons, the Court ADOPTS the recommendation of the magistrate judge. Accordingly, defendants' motion to dismiss is GRANTED IN PART solely with respect to plaintiff's FCA claims brought under the theory of "false certification," and the motion in all other respects is DENIED, leaving intact plaintiff' FCA claims and his state law *qui tam* claims.

SIGNED at Lafayette, Louisiana on this 16 day of May, 2008.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE